**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**RICHARD L. PANNELL,**

      **Plaintiff,**

**v.**                                                                               **Civil Action No. 2:11cv62**
                                                                              **(MAGISTRATE JUDGE JOEL)**

**DR. DAVID PROCTOR,**
**TRISTAN TENNEY, Medial Administrator/Nurse,**
**WEXFORD MEDICAL SOURCES CORPORATION,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**
**DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE**

### I. Procedural History

On August 12, 2011, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. § 1983. (Doc. 1). The plaintiff was granted leave to proceed *in forma pauperis* on August 16, 2011. (Doc. 6). On March 21, 2012, the defendants filed a Motion to Dismiss. (Doc. 20). The plaintiff filed a response to the defendants' motion on April 16, 2 012. (Doc. 26). The defendants filed a reply to the plaintiff's response on May 1, 2012. (Doc. 32).

Both the plaintiff and defendants have consented to exercise by a United States Magistrate Judge. (Doc. 91). Therefore, on July 9, 2012, this case was referred to the undersigned for all further proceedings. (Doc. 91).

### II. Contentions of the Parties

**A. The Complaint**

In his complaint, the plaintiff asserts that the defendants have violated the Eighth Amendment

to the United States Constitution by being negligent and deliberately indifferent to his serious medical needs. More specifically, the plaintiff alleges that medical staff at the Huttonsville Correctional Center prescribed Permethrin Cream 5% ("Permethrin"), to treat his scabies. The plaintiff maintains that Permethrin had caused his arms, legs and feet to "sting, itch and pus up". The plaintiff maintains that he alerted medical staff to this problem but "no medical care was given to [him] for his serious medical condition." (Doc. 1, p. 7). He further alleges that Permethrin is manufactured by Perrigo and is a defective product. The plaintiff maintains that the defendants had to know that "this was not how this product worked." (Id.) The plaintiff further maintains that there was no warning label on the cream, nor did the defendants warn him that he could be seriously hurt. Accordingly, the plaintiff maintains that the defendants, Proctor and Tenny, were negligent in their duty to find out what was wrong with the cream and himself. The plaintiff further alleges that he was never seen by defendant Dr. Proctor, and his condition was left undiagnosed. He maintains that his skin still cracks open and bleeds, causing him serious pain.

In summary, the plaintiff contends that defendants Proctor and Tenny are liable for failing to provide proper medical care for his serious medical needs. Additionally, he maintains that Wexford Health Sources, Inc., is liable for failing to properly train and instruct its medical employees. As a result of these allegations, the plaintiff requests that the Court order the defendants to give him proper medical treatment and damages totaling $525,000.00.

**B. Motion to Dismiss**

In their Motion to Dismiss, the defendants allege that the complaint is procedurally barred

because the plaintiff failed to disclose a previous lawsuit in his original complaint.[1]  In the alternative, the defendants allege the complaint is without merit because the plaintiff has failed to show that the defendants have violated the Eighth Amendment to the United States Constitution. Specifically, the defendants allege:

1. Wexford Health Sources is not a "person" pursuant to 42 U.S.C. § 1983.

2. There are no direct claims against defendant Tenny which would establish a a claim of deliberate indifference and that the only claims against defendant Tenney are in a supervisory capacity.

3. The plaintiff fails to allege a claim upon which relief can be granted.

**C. Plaintiff's Response to the Motion to Dismiss**

In his response to the defendants' motion, the plaintiff contends that his complaint constitutes a plausible claim for relief, such that it should survive a motion to dismiss.  In particular, the plaintiff argues that an exception exists under § 1983 that creates liability for Wexford Health Sources. Furthermore, the plaintiff argues that his complaint does contain a claim upon which relief can be granted against the defendants.

**D. Defendants' Reply to Plaintiff's Response to the Motion to Dismiss**

In their reply to the plaintiff's response, the defendants again argue that the plaintiff's complaint does not establish any claim upon which relief can be granted.  Additionally, the defendants claim that the plaintiff's response to the Motion to Dismiss contains new factual

---

[1] In 2009, the plaintiff filed a complaint in the United States District Court for the Southern District of West Virginia alleging deliberate indifference to his medical condition by numerous defendants.  The allegations arose from his confinement at the Mount Olive Correctional Complex. The complaint was eventually dismissed on March 16, 2010, when the defendants Motions to Dismiss were granted.  While the defendants in the instant action maintain that the plaintiff's failure to disclose this action on his complaint presents a procedural bar, they cite no case or statutory law in support of this position.

allegations that were not contained in the original complaint and are contraindicated by the complaint and the material filed therewith.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than

4

merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).[2] Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

---

[2]In elaborating on its holding in Twombly, the Court in deciding Iqbal, a civil right case, wrote:

Two working principles underlie our decision in Twombly. First the tenant that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation". (Internal quotation marks and citations omitted). Rule 8 . . . does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives the motion to dismiss.

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint they must be supported by factual allegations. When they are well-pleaded factual allegations, a court should assume never asked that he and then determine whether they plausibly give rise to an entitlement to relief.

129. S. Ct. at 1949-50.

Under the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but … must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is properly only "[w]here the record taken as a whole could not lead a rational trier of fact to find the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

In the plaintiff's complaint, it appears that he is challenging the sufficiency of the medical care he received for his skin ailments on two theories: (1) deliberate indifference to a serious medical need; and (2) medical negligence. For the reasons detailed below, the plaintiff's claims fail, and his complaint must be dismissed.

**A. Wexford Health Sources, Inc.**

The plaintiff alleges that the defendant(s) have deprived him of his rights and raises a claim under 42 U.S.C. § 1983 which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982). Generally speaking, Wexford is not a "person" for purposes of 42 U.S.C. § 1983, and the plaintiff makes no allegation that it was directly involved in his treatment or lack thereof.

The undersigned recognizes that "a private corporation [which is a state actor] is liable under § 1983 when an official policy or custom of the corporation caused the alleged deprivation of federal rights." Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999).[3] Here. The plaintiff alleges that Wexford is responsible for the alleged deprivation of his rights because it improperly trained its employees,

---

[3] A private entity which contracts with the state to provide medical services acts "under color of state law." West v. Atkins, 487 U.S. 42, 54 (1988).

Proctor and Tenney. This is not the type of official policy or custom which bring makes a private corporation liable under § 1983. Moreover, because the plaintiff's claims against Tenny and Proctor fail, his claim against Wexford must necessarily fail, as well.

**A, <u>Deliberate Indifference</u>**

Federal courts are discouraged from interfering with the daily operations and administration of state correctional facilities. See <u>Bell v. Wolfish</u>, 441 U.S. 520, 562 (1979)(warning courts against becoming "enmeshed in the minutiae of prison operations"). Inquiry of federal courts into prison management must be limited to the issue of whether a particular administrative action violates the Federal Constitution. <u>Id.</u> The plaintiff has alleged that the defendant have violated his Eighth Amendment right [to be free of cruel and unusual punishment].

In 1976, the Supreme Court established the standard for evaluating whether a prisoner's Eighth Amendment right to be free of cruel and unusual punishment had been violated by a prison healthcare provider. In rendering its decision, the Court found that to state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). Specifically, the Court found that to state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating

treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[4]

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849

---

[4] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997)

(4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

The plaintiff alleges that defendants Tenney and Proctor did not properly diagnose his skin condition. In addition, he alleges that Permethrin should not have been prescribed a second time. (Doc. 1, p.7). Even in the court were to accept that the plaintiff's condition amounted to a serious medical condition, the record as a whole disputes his claims that these defendants were deliberately indifferent to his medical needs.

On January 13, 2011, the plaintiff filed an Inmate Medical Services Request ("IMSR") requesting penicillin for a rash and blisters on his skin. (Doc. 1-1, p. 15). On January 14th, the next day, defendant Proctor responded, informing the plaintiff that penicillin is not used to treat rashes, instead, the plaintiff was given Permethrin cream. (Id.). On January 25, 2011, the plaintiff requested more Permethrin cream. Defendant Proctor responded to the plaintiff's request, informing him that he had completed the entire Permethrin course and there were no additional treatments. (Doc. 1-1, p. 17). On January 30, 2011, the plaintiff filed an IMSR complaining the Permethrin cream provided made his skin itch, however "but not a lot (sic)." (Doc. 1-1, p. 10). The IMSR document is marked "2-1-11," indicating that defendant Proctor, or a member of the medical staff, reviewed the plaintiff's request. On the 4th and 10th of February, 2011, the plaintiff filed two more IMSRs, complaining of itching arms, feet and legs. (Doc. 1-1, p. 8-9). On February 11, 2011, the plaintiff was prescribed Vistaril to help cure his irritated skin. (Doc. 1-1, p.11).

This evidence fails to establish that the individual defendants acted with deliberate indifference to the plaintiff's medical needs. Rather, they consistently prescribed him with timely medical care, and the fact that he have preferred a different course of treatment is simply irrelevant. Furthermore, the large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; "no care," rather than "bad care." See e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.), cert. denied, 502 U.S. 960 (1991). Here, even if the court concluded that the plaintiff received "bad care," which it does not, he did receive care. Therefore, the plaintiff's complaint fails to state an 8th Amendment claim and must be dismissed.

Moreover, to the extent that the plaintiff may be seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

**§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).[5]

With regard to the appropriate standard of care, plaintiff has completely failed to sustain his burden of proof. Plaintiff does not assert, much less establish, the standard of care for his skin condition. Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant(s)' breach of the duty of care. Moreover, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, even if this court has supplemental jurisdiction over the plaintiff's potential state law claims for medical malpractice, summary dismissal is appropriate.

---

[5] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

## V. Conclusion

For the reasons stated, Defendants' Motion to Dismiss (Doc. 20) **is GRANTED**, and the plaintiff's complaint (Doc. 1) is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted The Clerk is directed to enter a separate judgment in favor of the defendants and strike the case from the active docket of this Court.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: 10-5-2012

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE